* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1. Defendant-employer was noninsured. *Page 2 
2. Plaintiff has given defendants a signed medical release for defendants' use in investigating plaintiff's prior medical history.
3. Liability has not been admitted in this case.
 * * * * * * * * * * *
The following were marked and received into evidence as:
 EXHIBITS
1. Defendant's Exhibit No. 1 — Contract labor agreement;
2. Defendant's Exhibit No. 2 — Photocopies of checks paid to plaintiff;
3. Defendant's Exhibit No. 3 — Plaintiff's 2005 1099;
4. Defendant's Exhibit No. 4 — Plaintiff's 2004 1099;
5. Defendant's Exhibit No. 5 — Photocopies of February 2004 checks paid to plaintiff; and
6. Plaintiff's Exhibit No. 1 — Medical Records (submitted post-hearing).
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old and had completed the eleventh grade in school. Plaintiff testified at the hearing before the Deputy Commissioner that he had approximately 24 to 30 years experience in automobile detailing.
2. On February 2, 2004, plaintiff and defendant-employer entered into a "Contract Labor Agreement" wherein plaintiff agreed to clean twelve cars each week for $350.00. Plaintiff was to provide his own materials. Initially, defendant-employer paid plaintiff $350.00 per week *Page 3 
minus taxes and other deductions; however, beginning with plaintiff's March 19, 2004 paycheck, plaintiff asked to be paid "off the books" because he had financial problems and did not want any deductions. The parties agreed that defendant-employer would not be responsible for any Federal, State or FICA taxes and accordingly, defendant-employer would issue plaintiff an IRS 1099 Form at the end of the year.
3. According to plaintiff's testimony, Mr. Charles Jessup, President of defendant-employer, asked him to perform additional work without any extra compensation. Plaintiff testified that he helped with automobile repairs, cut grass, performed some basic landscaping work as well as other miscellaneous tasks.
4. Mr. Jessup testified that it was plaintiff who asked for additional work in order to earn money. Mr. Jessup further testified that plaintiff had medical problems including hypertension, back problems and poor eyesight, which necessitated asking another worker to properly complete car detailing that plaintiff had begun. According to Mr. Jessup, since he told plaintiff not to clean any more cars, plaintiff asked for the additional work.
5. Darlene Jessup, wife of Mr. Charles Jessup, also testified at the hearing before the Deputy Commissioner. Mrs. Jessup stated that she personally observed some of the cars that plaintiff had cleaned and that there were "filthy" and had to be redone.
6. On April 1, 2005, plaintiff testified that, at the request of Mr. Jessup, he assisted in the transplanting of large bushes along the edge of defendant-employer's car lot. The bushes were several feet tall with root balls that were approximately two feet in diameter. Plaintiff testified that as he eased one of the root balls into a hole, he felt pain in his back. Plaintiff testified that he "heard it snap" and thought, "I have broken my back really." Plaintiff testified that he told Mr. Jessup that he was leaving work early to go to the emergency room. According *Page 4 
to plaintiff, he returned to defendant-employer later that same day in an attempt to obtain money for his medication and the next day, he returned to the emergency room where he was hospitalized for a "pinched nerve, slipped disc."
7. Contrary to plaintiff's testimony, Mr. Jessup said that plaintiff did not report an injury to him. Mr. Jessup testified that plaintiff remained at work for approximately three more hours and then left work as usual. Mr. Jessup observed that plaintiff neither walked any differently nor complained of being injured.
8. Mr. Abraham Silana, a salesman for defendant-employer testified at the hearing before the Deputy Commissioner that plaintiff did assist in transplanting bushes on the day plaintiff said that he was injured. Mr. Silana testified that plaintiff remained at work until closing and never mentioned injuring his back. Mr. Silana further testified that plaintiff had told him that he had previously worked for Owens Brothers Moving and Storage where he had injured his back moving a sofa to the second floor of a home.
9. Mrs. Jessup testified that on the day plaintiff said that he was injured, he remained on the premises after the bushes were transplanted and even came into her office where he talked and laughed. Mrs. Jessup stated that plaintiff told her he wanted to go fishing that weekend and never mentioned that he had injured himself. On the day after plaintiff said that he was injured, Mrs. Jessup testified that he came to work but again did not mention having injured himself on the job.
10. Contrary to plaintiff's testimony that he went to the emergency room on April 1, 2005, records from Albemarle Hospital's emergency room reveal that plaintiff reported to the hospital on April 5, 2005 with complaints of back pain. *Page 5 
11. Plaintiff returned to the hospital again on April 8, 2005 with complaints of back pain, and was admitted to cardiac services for further evaluation, as he was severely hypertensive with a blood pressure reading of 220/144. On April 12, 2005, plaintiff was discharged from Albemarle Hospital with discharge diagnoses of uncontrolled hypertension, right lateral disc herniation at the L4-L5 level, alcohol and tobacco abuse and THC use. Plaintiff was advised to follow-up with a local primary care physician to establish treatment.
12. Because of the inconsistencies in plaintiff's testimony when compared with hospital records and other testimony at the hearing before the Deputy Commissioner, the Full Commission finds plaintiff's testimony not credible. Furthermore, even if an incident occurred on April 1, 2005, the Full Commission finds there is insufficient medical evidence to establish a causal connection between the alleged accident on April 1, 2005, and plaintiff's subsequent complaints of back pain.
13. On April 1, 2005, defendant-employer was a North Carolina corporation. Charles Ray Jessup was the owner and president of defendant-employer and has been in business for 28 years. Mr. Jessup testified that defendant-employer had been incorporated for seven years and that one employee had worked with defendant-employer for five or six years and that another had worked there for about nine years.
14. On April 1, 2005, defendant-employer did not have workers' compensation coverage. Mr. Charles Jessup testified that he had contacted Farm Bureau and was informed that because he only had two employees, it was not necessary to procure workers' compensation coverage. When Mr. Jessup learned that coverage was necessary as he was to be included in the counting of the number of employees, he obtained it. *Page 6 
15. The Full Commission finds that defendant-employer had three or more employees on the date of plaintiff's injury and was subject to the North Carolina Workers' Compensation Act. Defendant subsequently obtained the required workers' compensation coverage.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of the evidence. The Commission may accept or reject the testimony of a witness, entirely or in part, and is not required to accept even the uncontradicted testimony of a witness. Gaddy vs. Kern, 17 N.C. App. 680,195 S.E.2d 141 (1973). The Commission decides the weight to be given to a witness's testimony and may reject such testimony completely if warranted by the disbelief of that witness. Jarvis v. Food Lion,Inc., 134 N.C. App. 363, 517 S.E.2d 388 (1999). On April 1, 2005, defendant had three or more regular employees, and therefore, was subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(1).
2. In order to establish a compensable injury to the back, plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222,224; 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337;378 S.E.2d 799 (1989).
3. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident or specific traumatic incident as a result of the work assigned on or about April 1, 2005 or at any other time. N.C. Gen. Stat. § 97-2(6); Causby v. BernhardtFurniture Co., *Page 7 83 N.C. App. 650; 351 S.E.2d 106 (1986). Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. § 97-2(6).
5. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
6. Pursuant to N.C. Gen. Stat. § 97-94(e), the Commission may suspend collection or remit all or part of any civil penalty imposed under this section on condition that the employer or person pays the compensation due and complies with N.C. Gen. Stat. § 97-93.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be and is hereby denied.
2. Pursuant to N.C. Gen. Stat. §§ 97-94(b) and 97-93, a penalty of $2,000.00 is assessed against defendant-employer for failing to secure workers' compensation insurance. A check in this amount shall be made payable to the North Carolina Department of Commerce/ Industrial Commission, with a notation that it is for a penalty, and sent directly to Ms. Caroline Wall at 4340 Mail Service Center; Raleigh, NC 27699-4340.
3. The cost of the hearing shall be split between the parties.
 This the ___ day of May 2007. *Page 8 
 S/__________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING: S/__________________ BERNADINE S. BALLANCE COMMISSIONER
 S/__________________ DIANNE C. SELLERS COMMISSIONER